OELTJEN ET AL., APPELLANTS, *v.* AKRON ASSOCIATED INVESTMENT CO. ET AL., APPELLEES.

(No. 4766—Decided February 26, 1958.)

*Messrs. McGowan, Scanlon & Lombardi,* for appellants.

*Messrs. Weick, Genovese & Schreiner,* for appellees Akron Associated Investment Co., Charles W. McLaughlin, and Dorothy M. McLaughlin.

*Mr. Harry W. Schwab, Sr.,* for appellee Evelyn G. Hudak.

HUNSICKER, P. J. This is an appeal on questions of law and fact from a judgment of the Court of Common Pleas of Summit County, Ohio. The case is being tried *de novo* in this court upon the pleadings and testimony and exhibits presented in the trial court.

Mr. and Mrs. Ernest Oeltjen, herein called Oeltjen, claim to be the owners, by reason of adverse possession, of certain lands in Akron, Ohio, and one Evelyn G. Hudak claims to be the owner of the record title to such lands. Oeltjen seeks to quiet title to the land in question herein.

Evelyn G. Hudak, by way of answer, denies the claim of Oeltjen, and says she obtained title by means of a warranty deed from one Dorothy M. McLaughlin, also an appellee herein.

The testimony is that a now-dissolved corporation, Akron Associated Investment Company, laid out an allotment known as "Springvale Allotment" sometime prior to 1925 (the date when Akron Associated Investment Company dissolved). One of the lots in this allotment, on which was a house, became, in 1928, the property of Diedrich Oeltjen, the father of Ernest Oeltjen. This lot extended about 102 feet along Leland Avenue and about 40 feet along what was platted to be Englewood

Avenue. This portion of Englewood Avenue was never accepted as a public thoroughfare.

The house on the Diedrich Oeltjen land faced the unaccepted portion of Englewood Avenue. The side of that house extended along Leland Avenue. When Diedrich Oeltjen owned the premises he placed two trees on the land in question, and some dirt for a pathway which led from the front porch between the trees to the front of the land here in question.

In 1933, on or about Thanksgiving Day, Ernest Oeltjen and his family moved into this Diedrich Oeltjen home. On May 10, 1934, Mr. and Mrs. Ernest Oeltjen secured title to the Diedrich Oeltjen property. Ernest Oeltjen then began to fill up the low spots in front of his house and covered the dirt path with cement blocks, thereby constructing a cement walk leading between the trees toward the eastern boundary of the lands in dispute. He also, over the years, planted grass and placed some bushes on this disputed unaccepted portion of the platted Englewood Avenue.

All of the work of Oeltjen, except what was done by his father, Diedrich, in planting the trees and placing dirt from the front porch between the trees, was done after he moved into the premises in November, 1933. This action to quiet title was commenced August 27, 1954, about 20 years and 9 months after Oeltjen moved into the premises.

The rule in Ohio, with respect to obtaining title by adverse possession, that has been recognized for many years, is stated in the case of *Humphries* v. *Huffman,* 33 Ohio St., 395, as follows:

"3. One who enters upon unimproved land, under color of title which describes by metes and bounds the extent of the claim, and actually occupies and improves part thereof adversely to the real owner, claiming the whole, is presumed to hold by constructive possession to the extent of the boundaries called for in his paper title, in the absence of any adverse possession, though there be no inclosure or improvement of the residue of the tract.

"4. To lay the foundation for this presumed or constructive possession, the entry must be under claim or color of title, which describes the land entered upon, and to which the defendant claims title.

"5. Where the entry is without color of title, or upon a paper title, which is void for want of a description of any land, this presumption does not attach, and the adverse possession only extends to that part of the land actually occupied and improved."

The rule as stated in the *Humphries* v. *Huffman case, supra,* has not been altered or amended in any way. *Powers* v. *Malavazos,* 25 Ohio App., 450, 158 N. E., 654. The rule as stated is also the general rule. See 1 American Jurisprudence, Adverse Possession, Section 206, and authorities cited under note 15.

Thus, unless Oeltjen can establish that, for the required number of years, he, or he along with his father, has held the land in question, or some portion thereof, in actual possession and occupancy, his claim to quiet title to the tract must fail. See: *McNeely* v. *Langan,* 22 Ohio St., 32.

We think it evident and beyond question that, up to the date of trial, Ernest Henry Oeltjen and his wife did not occupy the premises herein for the required 21 years. If, then, they have any claim, it must arise by reason of acts of Diedrich Oeltjen prior to the occupancy of the appellants herein. Those acts, as we have set out above, consisted of planting two maple trees on the east or porch side of the house and placing some dirt in front of the porch for a walk between the trees. Ernest Oeltjen said this dirt his father placed on the land was to enable the tenants and his father, Diedrich Oeltjen, to get in and out of the house.

Is this sufficient to establish a title by adverse possession to the land on which the trees stand, and up to the line of the property admittedly owned by Oeltjen?

In Ohio, as in the majority of states where the matter has been before the courts, it has been held that one does not have adverse possession of land by a use consisting of cutting hay or gathering natural crop or mowing grass and cutting weeds. *Meyer* v. *Pockros,* 18 Ohio App., 506; 170 A. L. R., 863, and authorities there cited.

The reported cases disclose innumerable situations where claims of title by adverse possession have been reported. Our examination of these cases convinces us that each claim must be decided upon its peculiar facts; that there is no definite pattern

which will permit us to fit the facts into a mold and find for or against a claim of adverse possession. See: 2 Corpus Juris Secundum, Adverse Possession, Section 27 *et seq.,* and authorities there cited.

We think it obvious that the planting of trees is certainly open, visible, notorious and continuous. The owner or agent of the record title to these lands could surely see the trees from the time when they were first planted in 1929; and too, the dirt walk from the porch to the trees was plainly visible. These acts of Diedrich Oeltjen evidenced an intention to enter and claim this much of the property for himself.

On the facts in this case we believe that the appellants herein have shown, to the degree of certainty required, that they and their predecessor have used and occupied, for more than the required number of years, the lands to the east of their land to a line running north and south on the east side of the trees planted by Diedrich Oeltjen. To so much of the land as is included in the area so designated, the title of appellants, Oeltjen, may be quieted.

Counsel for Oeltjen will procure a survey of the lands herein set out, with a description thereof, to be incorporated in the journal entry of judgment.

Decree for appellants as indicated.

*Decree accordingly.*

DOYLE and STEVENS, JJ., concur.