[Cite as *Trayer v. Estate of Klopfenstein*, 2015-Ohio-5048.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

RANDY TRAYER,

    PLAINTIFF-APPELLANT,

    v.

SUCCESSOR IN INTEREST
TO AND ESTATE OF RON
KLOPFENSTEIN, ET AL.,

    DEFENDANTS-APPELLEES.

CASE NO. 1-15-20

O P I N I O N

Appeal from Allen County Common Pleas Court
Trial Court No. 2014 CV 0621

**Judgment Reversed**

Date of Decision:  December 7, 2015

APPEARANCES:

    *Michael T. Conway* for Appellant

    *Jared A. Wagner* for Appellees, Successor in Interest to and Estate of
        Ron Klopfenstein, Jeremy Hollis, and the Village of Elida

**WILLAMOWSKI, J.**

{¶1} Plaintiff-appellant, Randy Trayer ("Trayer"), brings this appeal from the judgment of the Common Pleas Court of Allen County, Ohio, dismissing his complaint against defendants-appellees, Successor in Interest to and Estate of Ron Klopfenstein ("Klopfenstein"), Jeremy Hollis ("Hollis"), and the Village of Elida (collectively, "the Appellees"). For the reasons that follow, we reverse the trial court's judgment.

*Procedural Background*

{¶2} On October 1, 2014, Trayer filed a complaint against the Appellees and Mike Sebenoler ("Sebenoler"), a councilman for the Village of Elida. (R. at 1.) Count One alleged a tort of termination in violation of public policy against the Village of Elida. Count two alleged a claim of interference with contract against Klopfenstein, Hollis, and Sebenoler. (R. at 1.) The facts presented in the complaint alleged that Klopfenstein, who was the mayor and chief law enforcement officer of the Village of Elida, conspired with Hollis, chief of police in the Village of Elida, and Sebenoler, a resident and councilman of the Village of Elida, to terminate Trayer from his job as a patrol officer for the Village of Elida. Trayer claimed that termination was in retaliation for his prior action of lawfully ticketing Sebenoler, who was Klopfenstein's friend. Because Klopfenstein had passed away before the commencement of this action, the lawsuit proceeded

against his estate. Trayer requested compensatory and punitive damages, as well as attorney fees and costs.

{¶3} Sebenoler filed an answer, denying the allegations in the complaint and requesting dismissal. (R. at 6.) The Appellees filed a motion to dismiss pursuant to Civ.R. 12(b)(6). (R. at 8.) Multiple grounds for dismissal were raised. As relevant to this appeal, the Appellees argued that the mayor and chief of police are immune from liability under R.C. 2744.03(A)(6) (providing immunity for employees of political subdivisions for acts or omissions in connection with a governmental or proprietary function), and the facts pled in the complaint were insufficient to overcome that statutory immunity. As to the claim against the Village of Elida, the Appellees asserted that Trayer set forth insufficient facts to plead the elements of the tort of termination in violation of public policy for his action of "enforcing the law." (*Id.* at 15.) In particular, they argued that the complaint failed to properly allege the "clear public policy" that was violated by his termination because there exists no clear public policy in Ohio that prohibits a municipality from terminating a police officer for enforcing the law. Indeed, they alleged that such a policy would "violate the notion of separation of powers." (*Id.* at 21.) Trayer opposed the motion to dismiss.

{¶4} After the parties filed additional memoranda in support of their positions, the trial court granted the Appellees' motion to dismiss. The trial court determined that Klopfenstein and Hollis were entitled to statutory immunity. (R.

at 19, at 5.)  With respect to the claim against the Village of Elida, the trial court agreed with the Appellees' assertion that that "[t]he public policy of Ohio does not prohibit a Village from terminating a police officer."  (*Id.* at 6.)  It also agreed that any restrictions on the mayor and police chief's discretionary enforcement powers "would result in a violation of the notion of separation of powers."  (*Id.* at 6.)

{¶5} Trayer filed the instant appeal in which he alleges two assignments of error, as quoted below.

### Assignments of Error

I.  **THE TRIAL COURT ERRED TO THE PREJUDICE OF THE PLAINTIFF-APPELLANT BY GRANTING THE DEFENDANT-APPELLEE VILLAGE OF ELIDA'S CIVIL RULE 12 (B)(6) MOTION ON THE PLAINTIFF'S CAUSE OF ACTION FOR WRONGFUL TERMINATION IN VIOLATION OF OHIO PUBLIC POLICY UNDER THE THEORY THAT A COURT OF LAW CANNOT REVIEW THE EMPLOYMENT TERMINATION DECISIONS OF THE DEFENDANT'S OFFICERS THE MAYOR AND CHIEF OF POLICE BECAUSE OF THE SEPARATION OF POWERS DOCTRINE. (R. 1629)**

II.  **THE TRIAL COURT COMMITTED PLAIN ERROR BY DISMISSING THE CASE *SUB JUDICE* GIVEN DEFENDANT MIKE SEBENOLER DID NOT MOVE THE COURT TO DISMISS THE CASE AGAINST HIM.**

### Analysis

{¶6} We first note that on appeal Trayer abandons his claims against Klopfenstein and Hollis, expressly challenging dismissal of the Village of Elida only.  (*See* wording of the First Assignment of Error and App't Br. at 5-6.)

Although Trayer states in his brief that he is "reserving all rights, in Count Two of the Complaint seeking a remedy for contract interference" (App't Br. at 6), we do not accept such a procedure for reserving rights due to the "long-standing precedent that any issue that could have been raised on direct appeal and was not is res judicata and not subject to review in subsequent proceedings." *State v. Saxon*, 109 Ohio St.3d 176, 2006-Ohio-1245, 846 N.E.2d 824, ¶ 16 (2006); *see Evanich v. Bridge*, 170 Ohio App.3d 653, 2007-Ohio-1349, 868 N.E.2d 747, ¶ 26 (9th Dist.) (applying the principle in a civil case).

{¶7} In the second assignment of error, Trayer challenges the trial court's dismissal of Sebenoler, even though the trial court's order did not dismiss Sebenoler as a party in the case. While in the introduction to its decision, the trial court stated that it "grants Defendants' Motion to Dismiss" (R. at 19), the rest of the document makes it clear that not all defendants have been dismissed from the action. The trial court specifically stated that it dismissed the complaint against "Successors in interest to Estate of Ron Klopfenstein, Jeremy Hollis, and the Village of Elida." (*Id.* at 6.) Therefore, the second assignment of error is overruled as based on an incorrect premise that Sebenoler was dismissed from the case.

{¶8} As a result, the only issue on appeal is the trial court's dismissal of count one of the complaint, which alleged a tort of termination in violation of

public policy against the Village of Elida. This issue is raised in the first assignment of error, which we analyze in detail below.

*First Assignment of Error—Sufficiency of the Complaint*

{¶9} The focus of this assignment of error is the appropriateness of the trial court's granting of the motion to dismiss on the basis that Trayer failed to state a claim of termination in violation of public policy. An appellate court reviews de novo the trial court's decision to grant or deny a Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted.. *Perrysburg Twp. v. Rossford*, 103 Ohio St.3d 79, 2004-Ohio-4362, 814 N.E.2d 44, ¶ 5. In reviewing the trial court's decision on a motion to dismiss, we must accept all factual allegations in the complaint as if they were true. *Id.* Additionally, we must construe any reasonable inferences in favor of the party opposing the motion to dismiss. *Arnett v. Precision Strip, Inc.*, 2012-Ohio-2693, 972 N.E.2d 168, ¶ 9 (3d Dist.). We will affirm the trial court's order granting the 12(B)(6) motion to dismiss if it appears "beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle the plaintiff to relief." *LeRoy v. Allen, Yurasek & Merklin*, 114 Ohio St.3d 323, 2007-Ohio-3608, 872 N.E.2d 254, ¶ 14.

{¶10} The tort of termination in violation of public policy, alleged by Trayer, is an exception to the employment-at-will doctrine, which states that discharge of an at-will employee does not give rise to an action for damages. *Sutton v. Tomco Machining, Inc.*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950

N.E.2d 938, ¶ 7-8 (2011). This exception applies "when an at-will employee is discharged or disciplined for reasons that contravene clear public policy expressed by the legislature in its statutes." *Id.* at ¶ 8. In order to maintain a cause of action for wrongful discharge in violation of public policy, a plaintiff must prove the following:

> (1) a clear public policy exists and is manifested in a state or federal constitution, in statute or administrative regulation, or in the common law (the clarity element), (2) dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element), (3) the plaintiff's dismissal was motivated by conduct related to the public policy (the causation element), and (4) the employer lacked an overriding legitimate business justification for the dismissal (the overriding-justification element).

*Id.* at ¶ 9, citing *Collins v. Rizkana*, 73 Ohio St.3d 65, 69-70, 1995-Ohio-135, 652 N.E.2d 653 (1995). While the first two elements (clarity and jeopardy) involve questions of law, elements three and four (causation and overriding-justification) involve questions of fact. *Id.*

{¶11} The instant case revolves around the first two elements of the tort at issue. The Appellees claim that Trayer did not sufficiently plead elements of the claim because the public policy alleged by Trayer does not exist in Ohio. We find it necessary to first clarify what public policy was alleged by Trayer in his complaint. Paragraph 16 of the complaint, states:

> Ohio public policy dictates ["]the police force of a municipal corporation shall preserve the peace, protect persons and property, and obey and enforce all ordinances of the legislative authority of

the municipal Corporation, all criminal laws of the state in the United States, all court orders issued … Both the police and fire departments shall perform any other duties that are provided by ordinance" Ohio R.C. 737.11.  * * * it is Ohio public policy that police officers enforce the laws of the state of Ohio as a condition of their employment.

(R. at 1, Compl. at ¶ 16.)  Our review indicates that Trayer alleged the existence of an Ohio public policy of enforcing the law by police officers.

{¶12} The Appellees misidentify the policy at issue, suggesting that Trayer alleged public policy that prohibits termination for enforcing the law.  (App't Br. at 6; *see also* R. at 8, Mot. Dismiss at 15 ("Plaintiff alleges that Ohio public policy prohibits a municipality from terminating a police officer for enforcing the law."); *id.* at 20 (arguing lack of body of law that creates "public policy prohibiting a village from terminating an at-will officer for allegedly enforcing the law").)  As can be gleaned from the language of the complaint quoted above, a prohibition against termination was not alleged by Trayer to be a part of the public policy (clarity) element.  Rather, Trayer's clarity element alleged the existence of a public policy of enforcing the law by police officers.

{¶13} The Appellees' reasoning combines the two elements of the tort of termination in violation of public policy: the public policy (clarity) element, and dismissal that would jeopardize this policy (jeopardy) element, suggesting that Trayer alleged a public policy against dismissal of a police officer for enforcing the law.  But the standard established in *Sutton* identifies the *existence of any clear*

*public policy* as the first element of the tort, not a policy against dismissal in a manner alleged by plaintiff. *See Sutton*, 129 Ohio St.3d 153, 2011-Ohio-2723, 950 N.E.2d 938, at ¶ 9. It is only after a clear public policy is identified that the analysis may proceed to determine the issue of dismissal that would jeopardize that policy (the jeopardy element). The trial court followed the Appellees' reasoning and stated that "public policy in Ohio does not prohibit a Village from terminating an officer." (R. at 19, at 6.) Yet, as explained above, *the standard at issue does not require a public policy that prohibits termination, but a public policy that could be put in jeopardy by the dismissal identified in prong two of the test*.

{¶14} As a result of the wrongly-identified policy at issue, the trial court failed to properly analyze the sufficiency of the allegations in Trayer's complaint. We therefore, reverse the dismissal and remand the case to the trial court so that it can properly determine whether Trayer sufficiently alleged (1) that Ohio has a clear public policy that requires police officers to enforce the law (the clarity element); (2) that "dismissing employees under circumstances like those [alleged by Trayer] would jeopardize the public policy" of enforcing the law; (3) that Trayer's dismissal was motivated by conduct related to enforcing the law (the causation element), and (4) that the Village of Elida lacked an overriding legitimate business justification for the dismissal (the overriding-justification element). *Sutton* at ¶ 9. We emphasize that in Ohio, a complaint needs only set

forth a "short and plain statement of the claim showing that the party is entitled to relief." Civ.R. 8(A). Ohio does not mandate that every fact be set forth in a complaint, just facts sufficient to put the defendant on notice. *Hughes v. Lenhart*, 3d Dist. Shelby No. 17-14-25, 2015-Ohio-933, ¶ 5.

{¶15} We further observe that separation of powers is not an element of the tort of wrongful discharge in violation of public policy. Neither is the plaintiff in a wrongful termination case required to establish constitutionality of the public policy at issue *through his or her complaint*. All that is required at this stage of the proceedings is a "short and plain statement" alleging the *existence* of a policy. Civ.R. 8(A); *see Sutton* at ¶ 8 (clarifying that a court reviewing the tort of wrongful discharge in violation of public policy does not establish public policy in Ohio, but merely recognizes what public policies are "established by the General Assembly"). Therefore, to survive a motion to dismiss, a plaintiff does not need to allege facts that will sustain a separation of powers or *any* possible challenge to the existing policy.

{¶16} We sustain the first assignment of error.

### *Conclusion*

{¶17} Having reviewed the arguments, the briefs, and the record in this case, we find error prejudicial to Appellant in the particulars assigned and argued. The judgment of the Common Pleas Court of Allen County, Ohio is therefore

Case No. 1-15-20

reversed and this case is remanded for further proceedings consistent with this opinion.

***Judgment Reversed***

**ROGERS, P.J. and SHAW, J., concur.**

**/hlo**